```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF OHIO
 2                      EASTERN DIVISION

 3                      - - - - -

 4

 5   UNITED STATES OF AMERICA,        )
                                      )
 6                    Plaintiff,      )  Case No. 1:19CR35
                                      )
 7              vs.                   )
                                      )
 8   DEMETRIUS N. PITTS,              )
                                      )
 9                    Defendant.      )

10

11                      - - - - -

12

13      TRANSCRIPT OF PROCEEDINGS HAD BEFORE THE HONORABLE

14     JUDGE  SOLOMON OLIVER, JR., JUDGE OF SAID COURT,

15          ON TUESDAY, FEBRUARY 11TH, 2020,

16          COMMENCING AT 10:30 O'CLOCK P.M.

17                      - - - - -

18

19

20

21   Court Reporter:          GEORGE J. STAIDUHAR
                              801 W. SUPERIOR AVE.,
22                            SUITE 7-184
                              CLEVELAND, OHIO 44113
23                            (216) 357-7128

24

25
```

1    APPEARANCES:

2       On behalf of the Government:

3          OFFICE OF THE U.S. ATTORNEY
           BY:  MICHELLE BAEPPLER, AUSA
4               JERRY TERESINSKI, AUSA
           801 W. Superior Avenue, Suite 400
5          Cleveland, OH 44113

6

7       On behalf of the Defendant:

8          JUSTIN ROBERTS, ESQ.
           Suite 1300
9          600 Superior Avenue
           Cleveland, OH 44114

10

11                    - - - - -

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          P R O C E E D I N G S

2          THE COURT:  You may be seated.

3          (Case called.)

4          THE COURT:  Good morning.

5          MS. BAEPPLER:  Good morning, your Honor.

6          THE COURT:  Will counsel for the

7    United States introduce themselves for the record?

8          MS. BAEPPLER:  Yes, your Honor.  Good

9    morning.

10          Michelle Baeppler and Jerry Teresinski for

11    the United States.

12          MR. ABRAHAM:  Good morning, your Honor.

13          THE COURT:  Good morning.

14          MS. BAEPPLER:  Your Honor, seated at counsel

15    table are Mike Ploskunak and Andrew Wilson of the FBI.

16          THE COURT:  Thank you.  And will the

17    pretrial probation officer introduce himself for the

18    record?

19          MR. ABRAHAM:  Yes, your Honor.  David

20    Abraham on behalf of U.S. Probation.

21          THE COURT:  All right.  And will counsel for

22    Defendant Demetrius N. Pitts introduce himself for the

23    record?

24          MR. ROBERTS:  Good morning, your Honor.

25    Justin Roberts on behalf of Mr. Pitts.

1          THE COURT:  All right.  And Mr. Roberts,
2    Mr. Pitts is seated to your right.
3          Is that correct?
4          MR. ROBERTS:  Yes, your Honor.
5          THE COURT:  All right.  Mr. Roberts, you
6    went over the presentence investigation report, didn't
7    you?
8          MR. ROBERTS:  Yes, your Honor.
9          THE COURT:  And you also went over that
10   report with Mr. Pitts, did you not?
11         MR. ROBERTS:  Yes, your Honor.
12         THE COURT:  And in fact, he shared certain
13   information he had with you in terms of changes that he
14   thought should be made.
15         Is that right?
16         MR. ROBERTS:  Yes, your Honor.  On two
17   occasions, before the first disclosure after he was
18   interviewed by the probation officer, he provided
19   information to me to provide to her on November 22nd,
20   2019, and after the first disclosure and after
21   discussions with him and after his review, I submitted
22   some corrections and objections to the probation office
23   on January 16, 2020.
24         THE COURT:  All right.  Good morning,
25   Mr. Pitts.

1          THE DEFENDANT:  Good morning.

2          THE COURT:  Your counsel, Mr. Roberts, he

3   went over that report with you, and you told him some

4   things you want to change.

5          Is that right?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  All right.  And so you had an

8   opportunity to make him aware of those things.

9          Is that right?

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  All right.  Ms. Baeppler, you

12  have reviewed the report?

13         MS. BAEPPLER:  I did, your Honor.  I

14  reviewed the report, and the Government also had one

15  objection.  I submitted that to the probation officer and

16  that has yet to be resolved.

17         THE COURT:  All right.  And we will get to

18  the objections that were raised by both parties, and I

19  will give some resolution to those, but let me just

20  acknowledge first, very important fact, and that is that

21  the parties did agree to a specific sentence in this

22  case, which would be binding on the Court if it accepted

23  the plea finally.

24         And the only other option would be if I

25  decided I wasn't going to follow it today, would be to

1  allow him to withdraw his plea, but I am going to accept

2  it based on my review of all the information I have.  I

3  had preliminarily accepted it already at the change of

4  plea hearing, and I have no quarrels with that.

5              So — and I will give my reasons why, but

6  that's my decision, and if anything changes as we can go

7  along, I will let you know, but that's my final decision

8  today.

9              That sentence was for 168 months.  Am I

10  correct about that, Mr. Roberts?

11              MR. ROBERTS:  Yes, your Honor.

12              THE COURT:  Am I correct about that,

13  Ms. Baeppler?

14              MS. BAEPPLER:  Yes, your Honor, that is

15  correct.

16              THE COURT:  Now, my understanding is the

17  Defendant, absent that plea, would have been facing 360

18  months to life imprisonment.

19              Am I right about that?

20              MR. ROBERTS:  That is correct, your Honor.

21  Yes, Judge.

22              THE COURT:  So the parties compromised and

23  decided that they would — that they thought that a fair

24  sentence would be 168 months, and so that's what the

25  parties negotiated and the parties agreed to.

1              You are waiving your hand.  Ask your counsel

2     if you want to speak to me, and he will get my intention.

3              But go ahead.  Is there a question you have,

4     Mr. Pitts?

5              THE DEFENDANT:  My time don't run no 360 to

6     life.  My first — the first offense only runs 20 years.

7     The other two offenses only run five years apiece.  I can

8     never be facing no 360 to life or nothing.

9              THE COURT:  Okay.

10              THE DEFENDANT:  Because the time limit don't

11     carry none of that.

12              THE COURT:  Okay.  I hear you, and so I will

13     go through everything.

14              THE DEFENDANT:  All right.

15              THE COURT:  Yeah.  Even though the parties

16     have agreed on a sentence, I still have responsibility to

17     determine what his guideline range would be in this case

18     and also to ensure that the sentence imposed is

19     sufficient but not greater than necessary to comply with

20     the purposes of the statute.

21              And in doing that, I still have an

22     obligation to look at the various factors under the

23     statute in that regard.  And so I will do that.

24              I think the best thing for me to do right

25     now is to determine what that guideline range would be.

1    In order to determine a guideline range, I need two

2    pieces of information.  One is called the offense level

3    or number that gets associated with the crimes.  The

4    higher the number, the more time a person faces, all

5    things being equal.

6            The other thing I kneed need to do is

7    determine the Defendant's Criminal History Category.

8    There are six Criminal History Categories.  Category I is

9    the lowest category and the best category to be in if you

10   are being sentenced.

11           Category VI is the highest category.  So the

12   lower your category, the better.

13           And so I have to determine offense level,

14   the number that gets associated with the crime, and then,

15   the Criminal History Category, which is normally based on

16   convictions, number of convictions, and how much they

17   count.

18           But here, also, there is a different matter

19   because of the nature of the crime that affects the

20   Criminal History Category in this case.  So that's how I

21   will proceed.  So let me go to the objections.

22           The parties have a plea agreement, and they

23   had a certain agreement on what the offense level should

24   likely be.  The pretrial probation officer, as he is

25   required to do, gave me his independent judgment on

1    whether those numbers should be followed by the Court or

2    whether he thought that I should come to a different

3    conclusion about certain aspects of that — numbers or

4    components of that offense level.

5            So the first objection we deal with is that

6    by the Government, and the Government submitted one

7    objection and the objection to the probation officer's

8    failure to assess — to assign a three-level official

9    victim enhancement, which was contemplated by the parties

10   for Defendant's threats against military personnel in

11   Count 1.

12           And so to start with, we did have the

13   parties taking a position on that; doesn't mean that they

14   put forth research or anything in support of it, but they

15   worked through an agreement, and they didn't conclude

16   that it should apply.

17           Now, they may have had different reasons for

18   that.  Sometimes negotiating they agree to things that

19   could apply, and so I understand that, but I start out

20   with that; that they — the parties agree that that one

21   should apply.

22           And the Government lays out information from

23   a recorded conversation by Mr. Pitts on June 15, 2018,

24   details that they think would support that they should

25   apply.

1            The pretrial probation officer's basis for

2    failure to apply is that though Mr. Pitts referenced

3    numerous Government buildings during his conversation, he

4    never spoke about a specific individual or individuals as

5    the target of the offense.

6            And so that was the basis, and the

7    Government's argument is that he talked about not just

8    buildings but personnel, military personnel, Coast Guard

9    I think, or what else, Ms. Baeppler?

10           MS. BAEPPLER:  The Coast Guard and the

11   Marines.

12           THE COURT:  Okay.  And the question is

13   whether that's specific enough.  That's really the issue

14   in terms of being individuals rather than buildings and

15   so forth.  And to me it is a close call.

16           I understand the probation officer's

17   conclusion that reading the guideline and the notes, that

18   it can't just be buildings and so forth, and that it

19   should be specified individuals.

20           I conclude in light of the parties'

21   agreement and in light of the fact that there is also a

22   logical reading that can be given to the Guidelines,

23   which would include that, since the Coast Guard persons

24   and other military people were referred to and I think

25   even particular areas.  Is that right, Ms. Baeppler.

1          MS. BAEPPLER:  Yes, your Honor.  The goal

2    was to plant a van packed with explosives in front of the

3    Coast Guard station in the hope of maximizing the

4    potential for death of Coast Guard personnel as well as

5    there being actual conversation by Mr. Pitts to terrorize

6    and kill Marines because they were responsible for

7    bombings overseas in the Middle East.

8          THE COURT:  All right.  So based on that

9    explanation, I will accept the parties' three-level — I

10   will sustain the objection and apply the three-level

11   official victim enhancement.

12          Now, the Defendant has a number of

13   objections.  There were four, and there were three of

14   which remain outstanding to the report.

15          Defendant objects to a six-level enhancement

16   pursuant to guideline section 3A1.2B.  Mr. Roberts, why

17   don't I have you put briefly on the record the objection

18   there, and then I will rule on it.

19          MR. ROBERTS:  Sure.

20          THE COURT:  This was not agreed to by the

21   parties.

22          Is that correct?

23          MR. ROBERTS:  Correct.  This particular

24   enhancement was not in the plea agreement.

25          And the offense of conviction that it

1    relates to is one regarding a threat against the

2    President of the United States, and so our argument is

3    that, one, it was not in the plea agreement;

4            Two, the offense itself accounts for the

5    fact that it was a threat against the President of the

6    United States, and probation has added this enhancement.

7            But the application notes suggest that there

8    needs to be evidence to suggest that the individual

9    against whom the threat was made, it has to be the

10   specific motivation for the threat, and this was a case

11   that involved a lot of threats and a lot of statements

12   made over the course of multiple hours of recording.

13           But there wasn't anything that I would say

14   that shows the specific motivation for the offense other

15   than what the guideline already contemplates, which is

16   what the parties agreed, which is 12.

17           THE COURT:  All right.  Again, pretrial

18   probation officer was appropriate in telling me what he

19   thought should happen here.  This is not the easiest case

20   to score.  We don't have these kinds of cases, and so I

21   know the Court hasn't, and so I understand why he

22   suggests that that six-level increase is necessary.

23           In light of your argument, Mr. Roberts, and

24   the fact the parties did not agree to that in coming to a

25   decision about the plea agreement here, I will sustain

1    your objection.  I won't add that six levels.

2                    Mr. Abraham, keep track for me here.

3                    MR. ABRAHAM:  Yes, your Honor.

4                    THE COURT:  So when I get to figure out the

5    number, the final number, I can do that easily.

6                    So I sustained the objection there, and so I

7    won't add those.  I won't add those.

8                    So then, the next objection had to do with a

9    robbery conviction and whether it was beyond the 15-year

10   time period that is provided for in the rules.  And the

11   question here is whether we count when a person is

12   paroled, on parole as part of the 15-year period or not.

13                   Mr. Abraham, do you know whether you count

14   when a person is on parole or not?

15                   MR. ABRAHAM:  Your Honor, if there were

16   violations on parole, you would count the last time he

17   was returned to prison, the last release.  That 15-year

18   period would start from the last release from prison,

19   regardless whether he was sent back for a violation or

20   not.

21                   So — and we are looking at a three-point

22   conviction.  You are going back 15 years from the last

23   release from imprisonment.  So in this case, it would be

24   15 years from the date of that release from imprisonment,

25   was 2-10 of 2003.

1          THE COURT:  Okay.

2          MR. ABRAHAM:  So if the instant offense

3    conduct began on 2-10 of 2018 or later, that would be the

4    15-year period.

5          THE COURT:  Okay.  And what happened

6    here?

7          MR. ABRAHAM:  In this case, according to the

8    offense conduct section of the report, the conduct began

9    on — in 2017 actually, or you could justify actually it

10   began as early as 1999, but on January 25, 2017, is when

11   he began posting things to Facebook.

12         THE COURT:  Okay.  Mr. Roberts, you made

13   your arguments.  The pretrial probation officer has in

14   there set it out.

15         Is there anything else?

16         MR. ROBERTS:  No, your Honor.  I just

17   pointed out to probation that the indictment, Count 1,

18   started February 13, 2018, which is beyond the 15 years.

19   There is background investigation material that is

20   discussed in the discovery and in the plea agreement, and

21   our argument is that some of the conduct in 2017 is not

22   necessarily relevant conduct to Count 1.  It is certainly

23   how the investigation got started.  That was our argument

24   to probation.

25         THE COURT:  Your argument was the indictment

1    refers to — what is the date?

2                MR. ROBERTS:  The date was — Count 1 was

3    February 13, 2018, through July 1, 2018.

4                THE COURT:  And you are saying that would

5    put it beyond 15?

6                MR. ROBERTS:  That was our — yes, your

7    Honor.

8                THE COURT:  Mr. Abraham, you said outside of

9    looking at what the indictment says, that the factual

10   information that you have suggests that, right?

11               MR. ABRAHAM:  Yes, your Honor.

12               According to the Guidelines, we consider

13   relevant conduct as part of the offense, and relevant

14   conduct takes the Defendant's conduct all the way back to

15   January of 2017, if not before that.

16               THE COURT:  All right.  Okay.  Mr. Roberts,

17   I will overrule your objection on that one and sustain —

18   I mean, I will overrule the objection and follow the

19   recommendation of the pretrial probation officer.

20               In essence, it doesn't make any difference

21   in terms of Criminal History Category because the

22   Defendant would have a Category VI in any event, which

23   would be higher than the resulting category even when I

24   count what Mr. Abraham suggests.

25               So Mr. Abraham, now, I want you to work with

1    me here in Court unlike what we normally do.  I want

2    first to come up with the offense level in light of my

3    rulings.

4            MR. ABRAHAM:  Okay.  Your Honor, I believe

5    we would start off with a base offense level of 26 for

6    Count 1, and we would have a — ask for an increase of

7    two levels because of the —

8            THE COURT:  Victim-related adjustment,

9    right?

10            MR. ABRAHAM:  If you are going by the plea

11    agreement calculation, your Honor, they have an increase

12    level, two levels for the intent, knowledge, or reason to

13    believe the support would be used to commit a violent act

14    pursuant to 2M3.3(b)(1).

15            THE COURT:  Well, why don't we go by what's

16    in your report?

17            MR. ABRAHAM:  Okay.

18            THE COURT:  But excluding anything that I

19    indicated shouldn't be there, and we will go with that.

20            MR. ABRAHAM:  Okay.  So you would start out

21    with a base offense level of 26, and then you would

22    also — our report does also include a two-level increase

23    pursuant to 2M5.3(b)(1).  That would take it up to a 28.

24            And then, you would have an additional for

25    the victim-related adjustment.  It would be an additional

1    six levels.  One second.  Yes, it would be an additional

2    six level increase.  I'm sorry.  Did you apply the

3    three-level increase?

4            THE COURT:  Let me back up.  Let's look at

5    the objections.

6            I sustained the objection that there should

7    not be a six-level increase relative to the threat on the

8    President in terms of motivation, right, so that would

9    just be backed out.  And I sustained.

10           MR. ABRAHAM:  I apologize, it was a

11   three-level increase.  I am sorry.

12           THE COURT:  Yeah.  And then, Ms. Baeppler

13   had an objection.  I sustained her objection, so that

14   would have been — those points would go back in.  I

15   think those are the only two, right?

16           MR. ABRAHAM:  Yes.  I apologize.  So it is

17   26, your Honor, plus the two levels, plus three levels.

18           Is that correct?

19           THE COURT:  Mr. Roberts, Ms. Baeppler, I

20   want you to confirm where we are on the offense level now

21   because we have multiple counts, and so I want to be

22   careful here.

23           MS. BAEPPLER:  Your Honor, the agreement of

24   the parties is a base offense level of 26 plus two for

25   the intent, knowledge, or reason to believe the support

1    would be used to commit a violent act.  That's under

2    205.3(b)(1)(E), a 12-level increase for terrorism

3    enhancement, and a three-level increase for the official

4    victim adjustment.  That's all related to Count 1, the

5    attempted material support.

6              THE COURT:  All right.

7              MS. BAEPPLER:  In contrast, probation's

8    calculations for Count 1, now that the Court has ruled on

9    the objections, is a base offense level of 26, a

10   two-level adjustment upward for using a phone or

11   photograph, something to that effect, twelve additional

12   levels for the terrorism enhancement, and the victim

13   adjustment the Court having ruled up three.

14             So if my math is correct, I believe that

15   probation's adjusted offense level would be 43 after the

16   Court's rulings on the objections, which would mirror the

17   Government's adjusted offense level of 43.  The only

18   difference is the plus two by the parties is different

19   than the plus two by probation.

20             THE COURT:  Okay.  But the offense level

21   would be 43.

22             MS. BAEPPLER:  I think — I believe so for

23   Count 1.

24             THE COURT:  Mr. Roberts, do you agree with

25   that?

1    MR. ROBERTS:  Yes, your Honor.

2    THE COURT:  Okay.  So that is my ruling on

3    that, but go ahead for the others.

4    MR. ABRAHAM:  For Count 2, your Honor, it

5    would be a base offense level of 12.

6    THE COURT:  All right.

7    MR. ABRAHAM:  No increase for the

8    victim-related adjustment.

9    THE COURT:  Okay.  I got that.

10    MR. ABRAHAM:  And so it would be an adjusted

11    subtotal offense level of 12.

12    THE COURT:  All right.  And then, Count 3,

13    threats against immediate family members of the

14    President.

15    MR. ABRAHAM:  That would be the same.

16    THE COURT:  They remain the same, which

17    would be 18, right?

18    MR. ABRAHAM:  I'm sorry.  It would also be

19    12 without the six-level increase, so it would be

20    subtotal offense level of 12 for that count as well.

21    THE COURT:  Okay.  So that's my finding.  So

22    now let's do the multiple count adjustment.

23    MR. ABRAHAM:  So you are starting out with

24    Count 1 adjusted offense level of 43, which is the

25    greater of the adjusted offense levels.

1          There would be no units assigned to Count 2

2    or 3 because they are so much lower than Count 1 and

3    would result in a combined adjusted offense level of 43

4    and then prior to acceptance of responsibility.

5          THE COURT:  And if I were to grant

6    acceptance of responsibility and the Government wants to

7    move for a third level, it would be at 40.

8          MR. ABRAHAM:  Correct, correct, your

9    Honor.

10         THE COURT:  All right.  And Ms. Baeppler,

11   are you prepared to make a motion that he gets three

12   levels for acceptance rather than the two I could give

13   without your motion?

14         MS. BAEPPLER:  Yes, your Honor.

15         Mr. Pitts did timely notify the Government

16   of his intention to plead, and to that extent, I do

17   believe he is entitled to the third level and would move

18   for the same.

19         THE COURT:  Okay.  I will grant your motion.

20   So the total offense level would be 40.

21         Mr. Roberts, any objection to that?

22         MR. ROBERTS:  No, your Honor.

23         THE COURT:  All right.  Ms. Baeppler, no

24   objection?

25         MS. BAEPPLER:  No objections, your Honor.

1          THE COURT:  All right.  Now I turn to

2     Criminal History Category.

3          Mr. Abraham, in light of the fact that I

4     sustained the objection in regard to one of the

5     convictions, what are the numbers now relative to

6     Criminal History Category?

7          MR. ABRAHAM:  So the report is actually

8     correct in terms of Criminal History since you sustained

9     that objection, so it would be subtotal Criminal History

10    Category of IV.  You would add two points for being under

11    supervision with a total Criminal History score of 6.

12          However, because of the offense involving a

13    crime of terrorism the Defendant's Criminal History

14    Category would increase to VI.

15          THE COURT:  Okay.  And so that's all in the

16    report here because I followed your recommendation when I

17    sustained Mr. Roberts.

18          MR. ABRAHAM:  Correct, your Honor.

19          THE COURT:  Okay.  So that's my

20    determination, Category VI, because of the nature of this

21    particular offense.  Otherwise, he would have been in

22    Category III.

23          Any objection to that Mr. Roberts?

24          MR. ROBERTS:  No, your Honor.

25          THE COURT:  Ms. Baeppler?

1          MS. BAEPPLER:  No, your Honor.

2          THE COURT:  All right.  Next thing,

3    Mr. Pitts, is I am going to hear from your counsel.

4          He has filed a brief on your behalf, and of

5    course, he has been working to have certain corrections

6    made to the report.  We have discussed those.

7          And some of those rulings were in your

8    favor, and so I am going to hear from him now, and he can

9    say anything else he wants to say for you.  After he has

10   spoken, I will give you some opportunity to speak.  You

11   have a right to speak, but you are not required to say

12   anything, and then I will hear from Ms. Baeppler, and

13   then I will make any decision finally in regard to

14   sentence.  All right?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  Okay.  Mr. Roberts?

17         MR. ROBERTS:  Your Honor, I think we have

18   and the parties have spoken through the plea agreement,

19   and I don't have a lot to add to that.  I understand the

20   Court has accepted the parties' binding sentence.

21         But a few matters, and as one, your Honor, I

22   know this was an issue in the presentence report, it

23   wasn't necessarily in the nature of an objection, but

24   Mr. Pitts does maintain that he did receive his GED in

25   Illinois, and that he had attended Taft High School in

1    Cincinnati.

2              And he obviously has been incarcerated for a

3    while since the beginning of this case and has just not

4    been able to get any records to verify that for

5    probation.  I understand she has made some calls, but I

6    would like the Court to know that he maintains that he

7    did obtain his GED.

8              THE COURT:  Let me ask Mr. Abraham whether

9    this would be possible.  I haven't reviewed in detail the

10   information around that, but if the report doesn't

11   reflect that he maintains those things, but you can't

12   verify them, would you make sure the report says that?

13   He maintains certain things, but they have not been able

14   to be verified.

15             MR. ABRAHAM:  Very well, your Honor, and if

16   the BOP is not able to obtain those records, he will have

17   to obtain his GED in the BOP afterward unless he can

18   verify that.

19             THE COURT:  Yeah.  I don't have a problem

20   with that.  I am just saying, you know, if he wants it

21   known that that's what he says —

22             MR. ABRAHAM:  Yes, your Honor.

23             THE COURT:  — and if he ultimately can

24   verify it but I think if you put that in.

25             MR. ABRAHAM:  Yes.

1          MR. ROBERTS:  Thank you, your Honor.

2          And Mr. Pitts would also ask the Court to

3   recommend designation to Butner in North Carolina.  That

4   is something he has been talking with me about for

5   sometime.

6          THE COURT:  Do they have mental health

7   there, a unit?  I will recommend that.

8          Ms. Baeppler, you have no objection to that,

9   do you?

10          MS. BAEPPLER:  Of course not, Judge.

11          THE COURT:  Okay.  Go ahead.

12          MR. ROBERTS:  Your Honor, he would also, to

13   the extent that the Court would grant it, ask for the

14   drug program, the intensive drug treatment program, and

15   then, finally, your Honor, he has asked while with —

16   excuse me, your Honor.

17          (Discussion held off the record between

18   defense counsel and Mr. Pitts, and the following

19   discussion was held:)

20          MR. ROBERTS:  Your Honor, those are the

21   requests on behalf of Mr. Pitts.  Thank you.

22          THE COURT:  Okay.  Anything further.

23          MR. ROBERTS:  Nothing further.

24          THE COURT:  All right.  Mr. Pitts, if there

25   is something you wish to say, you may do so now.

1          THE DEFENDANT:  Okay.  As this whole case

2    has been described and it went on and stuff and

3    everything and stuff I see that even though, okay, it was

4    first the snitch that came to me.  Then I got turned over

5    to the FBI's undercover agent.

6          Okay.  Having conversations about Islamic

7    groups and things that needed to be done or things that

8    should be done, even though that I — okay, like I would

9    say, that I admitted about being mad and angry what they

10   are doing to Muslims over there, which I should be angry.

11   You are destroying someone that is part of my belief.

12          And you are fighting for no reason because

13   you say that they have something over there that has not

14   been proven.  And I know I should have never said these

15   things, and I apologize.  But for one thing, I am not a

16   terrorist.  That's one thing I am not.  I am not a

17   terrorist.

18          I did say things out of anger because, as

19   they were showing me different videos and different

20   things, I got mad.  I got very, very upset and mad

21   because what I seen.

22          THE COURT:  Okay.  Now, don't — you should

23   probably not spend a lot of time —

24          THE DEFENDANT:  I am finished.

25          THE COURT:  Going to the facts of the case,

1    but if there are things you want me to consider in terms

2    of sentence or anything like that or things about

3    yourself that you think would —

4              THE DEFENDANT:  Okay.  Things about myself,

5    Judge —

6              THE COURT:  Background, you know, factors,

7    things like that.

8              THE DEFENDANT:  Okay.  Well, things about

9    myself, I have no type of — no like these type of

10    incidents in my criminal past or nothing like that.  I

11    don't feel that I am a threat to society.  Um, I think

12    that — I'm just saying that I think the Court should

13    look at it a different way because like when I said I

14    apologize, but true, I am not a terrorist.  I am not part

15    of no organization.  I just said things in anger, which I

16    was angry about, and I should have never said those

17    things.

18              THE COURT:  Right.  But you agree that the

19    things you put in your plea agreement, they are truthful.

20    You didn't lie in the plea agreement, right?

21              THE DEFENDANT:  No, sir.

22              THE COURT:  All right.  Okay.  Anything

23    further.

24              MR. ROBERTS:  No, your Honor.  The Court I

25    know has read the presentence report and knows Mr. Pitts'

1    family background and health background, and we would ask

2    the Court to consider that as well.

3                      THE COURT:  All right.  Okay.

4                      Ms. Baeppler?

5                      MS. BAEPPLER:  Thank you, your Honor.

6                      Your Honor, I submitted a lengthy sentencing

7    memo that I know you reviewed, but I would like to take

8    just a moment to highlight a few facts that I would ask

9    the Court to consider in imposing sentence.

10                     Mr. Pitts' support of foreign terrorist

11   organizations dates back to 2015 when he began his online

12   posting in support of their violent ideology and their

13   violent activities, and that support extended into 2017.

14                     In 2018, Mr. Pitts evolved from an online

15   terrorist supporter to one that was willing to take

16   action.  And at Mr. Pitts' request in 2018, he asked to

17   meet an individual who he believed to be an al Qaeda

18   brother or al Qaeda operative.  That was his request.  He

19   sought this person out.

20                     Once he met this individual, he wanted to

21   put his plans into action, and the way he wanted to do

22   that was to detonate a bomb in the city of Cleveland.  He

23   chose the means for the attack, i.e., a bomb, and he

24   chose the date for the attack, the 4th of July.

25                     On multiple occasions, Mr. Pitts met with an

1    individual that he believed was an al Qaeda brother, an

2    operative, and he discussed planning this attack with

3    them.

4           And not only did he discuss planning the

5    attack with them, it was his idea to go out and conduct

6    the reconnaissance in downtown Cleveland, and he did that

7    by walking around and taking photographs and video of

8    places and buildings that he thought were worthy targets

9    for a terrorist attack.

10          After he took those reconnaissance, that

11   reconnaissance footage, he took that footage and he then

12   provided it to a person that he thought was an al Qaeda

13   operative so this attack could take place.

14          As if the death and destruction in the city

15   of Cleveland were not enough, it was Mr. Pitts' idea then

16   to move on to Philadelphia.  He expressed a desire to go

17   on to Philadelphia and conduct reconnaissance for the

18   next terrorist attack.  This again was his idea.  He did

19   it on his own.  Nobody suggested it to him.  Nobody

20   prompted it to him.

21          I highlight all these things, your Honor, to

22   show that Mr. Pitts wasn't just somebody sitting behind a

23   computer screen; he was somebody that was willing and

24   ready the take action.  He had evolved into somebody that

25   was engaged in a terrorist attack.

1          I would also note for the Court that when he

2   was interviewed after his arrest, he was asked

3   specifically by agents, "hey, what's going on with the

4   4th of July?

5          "Do you know anything about the 4th of

6   July?"

7          And instead of at that point coming clean,

8   he was content to just let this happen.  He failed to say

9   anything.  He failed to divulge what he believed was

10  about to happen as an attack.

11         Finally, I would note for the Court that in

12  his presentence statement or in his statement to

13  probation, he showed no remorse.  He victimized himself,

14  claimed he got caught up in something, and he had no

15  intentions of ever engaging in a terrorist attack, which,

16  based on his actions and his statements, is completely

17  untrue.

18         Your Honor, the sentence in this case that

19  the parties have agreed to is significant.  However, it

20  is a fair sentence, and in light of his intentions and

21  his actions, he is a danger to the community, and we

22  would ask you to impose that sentence.  That would be a

23  sentence of 14 years on Count 1 and five years on Counts

24  2 and 3 and would ask the Court to run those sentences

25  concurrently to one another.

1          Thank you.

2          THE COURT:  My responsibility is to impose a

3     sentence that is sufficient but not greater than

4     necessary to comply with the purposes of the statute.  In

5     doing that, I have to look at a number of things,

6     including the nature and circumstances of the offense,

7     the history and characteristics of the Defendant in this

8     case.

9          And the sentence is meant to reflect the

10    seriousness of the crime, to promote respect for the law,

11    and to be a just punishment at the same time.  And the

12    sentence is also meant to afford adequate deterrence to

13    criminal conduct, to protect the public from further

14    crimes by Defendant, and to provide Defendant with needed

15    education or vocational training or medical care or other

16    correctional treatment in the most effective manner and

17    also look at the kinds of sentences available.

18         We talked earlier about — or I mentioned

19    earlier about what the sentencing range would have been

20    in this case but for the parties' agreement.  So I won't

21    go back over that, but the question I have to do is

22    assess whether this agreed upon sentence is sufficient

23    but not greater than necessary to comply with the

24    purposes of the statute.

25         So it is really not the same as me sitting

1    to try to come up with a sentence.  It is, does this one

2    fall within that category, and after reviewing it

3    thoroughly everything, including the presentence

4    investigation report, the arguments of the parties, the

5    sentencing memorandums filed by the parties, I have

6    concluded that it is sufficient but not greater than

7    necessary to comply with the purposes of the statute.

8              I looked at the Defendant's background, and

9    that's something I obviously have to consider, and there

10   are some factors there, which clearly suggest he

11   shouldn't have been sentenced in that very high range

12   that he would have been exposed to, and that the

13   agreement is reasonable.

14             He has had some mental health related

15   issues.  There was a determination here that he was

16   competent to stand trial, and I made that determination

17   after getting a recommendation from the Bureau, the

18   doctors there, that he understood the charges, and that

19   he could assist in his defense.

20             That's one matter, and it is a very

21   important matter, but also, when you look at, you know,

22   at least the information suggesting that he may have

23   tried to commit suicide many times that he says, and

24   there may be some evidence to support he may have some

25   diagnoses or had some in the past of bipolar disorder.

1            Also, looking at the report from the Bureau,

2    even though they found he was competent, there were some

3    things suggesting that he had some other kinds of

4    problems.

5            So I look at all of that, and that's

6    something to take into consideration.  He also seemed

7    pretty inept in many respects in trying to carry out some

8    of the things he was trying to do and would suggest there

9    are probably some mental — I am not talking about that

10   he has a mental illness that would rise to that level,

11   that would affect legal culpability, but there are some

12   mental health-related issues here, and I take that into

13   consideration.

14           Also, family background, it sounds like he

15   had a difficult upbringing; that he may have been abused

16   by his mother.  At least, that's what he says, and so he

17   didn't get to the point of finishing high school.

18           I look at all that and kind of his life up

19   to this point, and it has really been — I don't know how

20   I would describe it, but it has not been ordinary.  It

21   has been difficult, kind of a life circumstances.  So I

22   looked at all of that and take that into consideration in

23   the context of what sentence to impose.

24           But you can't be making threats against

25   Presidents of the United States.  You can't be

1    threatening the Presidents' families, and there are a lot

2    of good reasons for it.  First of all, people are likely

3    to take threats seriously, and they should.

4                So apart from the harm that you could

5    actually do by carrying something out, the threat itself

6    is just serious in and of itself to put everybody on

7    alert, to have law enforcement worried and concerned

8    about what you might do, and if the persons were to know

9    about it, the kind of concern that they might have and,

10   you know, we just can't allow that.

11               Supporting these foreign terrorist

12   organizations, again, providing resources, that's a very

13   serious crime, and the law makes it a serious crime in

14   terms of its penalties and punishment.

15               And you got a Criminal History Category VI

16   because of the nature of that crime.  You were facing

17   potentially a 30-year minimum sentence as a result of

18   that crime.  That's how serious the law takes the crime.

19               And so that's where we start out, and then,

20   the question becomes:  Are there circumstances here to

21   suggest that this was not among the top level kinds of

22   crimes that fit in here?  Does this look like something

23   that was — I look at kind of whether it was likely to

24   happen even though you committed the crimes and look at

25   your circumstances.

1    And so that's where I come down to the
2    conclusion that 168, which is well below what you might
3    have been facing, is sufficient but not greater than
4    necessary the comply with the purposes of the statute.  I
5    don't think you should have anything that is more than
6    that at all.  And I think that the sentence is sufficient
7    but not greater than necessary to comply with the
8    purposes of the statute.

9    And that's my conclusion.

10   So let me formalize the sentence.  When I
11   talked before about the federal psychiatric examination,
12   which concluded that you were not suffering from a severe
13   mental illness or mental defect, the clinician opined
14   that you did have an antisocial personality disorder and
15   cannabis use disorder and indicated that you had the use
16   of illicit substances beginning in adolescence with
17   alcohol and marijuana.

18   And then they go to talk about attempted
19   suicide on several occasions, at least as you report it,
20   with the use of cocaine base.  And so I just wanted to
21   make sure that was clearly there.  But the things you did
22   here were serious, and they were going to subject you to
23   a serious punishment.

24   Pursuant to the Sentencing Reform Act of
25   1984, it is the judgment of this Court the Defendant

1    Demetrius Pitts is hereby committed to the custody of the

2    Bureau of Prisons to be imprisoned for a term of 168

3    months on Count 1, 60 months on each of Counts 2 and 3,

4    all terms to be served concurrently.  So the total

5    sentence is one 68 months.

6              Is that correct?  That's what the parties

7    agreed to?

8              MR. ROBERTS:  That's correct, your Honor.

9              MS. BAEPPLER:  That is correct, your Honor.

10             I would just note for the Court there was an

11   additional agreement of the parties for a lifetime of

12   supervised release.

13             THE COURT:  Right.  Upon release from

14   imprisonment, Defendant shall be placed on supervised

15   release for a lifetime as agreed.  Within 72 hours of

16   release from the custody of the Bureau of Prisons, he

17   shall report in person to the U.S. pretrial probation

18   office in the district to which he is released.

19             I would say in terms of the lifetime of

20   supervised release, as I understand it, if a person is a

21   model citizen, goes for a very long period of time and

22   there are no violations and there is a suggestion the

23   person is completely reformed, that they can always

24   motion the Court to see whether they can get a lesser

25   period of time.

1          Based on my review of Defendant's financial

2    condition, I have determined that he doesn't have the

3    ability to pay a fine, so I will waive that.  He will be

4    required to pay a special assessment of $300, which is

5    due and payable immediately.

6          If you are not able to pay that now, you

7    have to start paying on that through the Bureau of

8    Prisons Inmate Financial Responsibility Program at no

9    less than 15 percent of your gross monthly income.

10          When you are on supervision, you must comply

11    with the mandatory and standard conditions that have been

12    adopted by this Court and set forth in Part D of the

13    presentence investigation report.

14          You must comply with the following

15    additional conditions.  You must refrain from any

16    unlawful use of a controlled substance, submit to one

17    drug test within 15 days of release from imprisonment,

18    and to at least two periodic drug tests thereafter as

19    determined by the Court.

20          I am going to recommend to the Bureau that

21    you be placed in an intensive substance abuse program.  I

22    am not sure whether you will qualify or not, but the

23    Bureau will make that determination.  I think that would

24    be helpful.

25          When you come out and you are on

1   supervision, you shall participate in an approved program

2   of substance abuse testing and or outpatient or inpatient

3   substance abuse treatment as directed by the supervising

4   officer.

5           You must abide by the rules of the treatment

6   program, and the probation officer will supervise your

7   participation in the program, and you shall not obstruct

8   or attempt to obstruct or tamper in any fashion with the

9   efficiency and accuracy of any prohibited substance

10  testing.

11          And you will be required to participate in

12  an approved program of mental health treatment and

13  counseling as directed by the supervising officer and

14  abide by the rules of the treatment program.  And the

15  officer will supervise your participation in the program,

16  and I think that's going to be very, very helpful to you.

17          You will be required under some

18  circumstances to submit your person, property, house,

19  residence, vehicle, papers, computers, other electronic

20  communication, data storage devices, media, office to a

21  search conducted by a United States Probation Officer,

22  but they can only search your house or your premises or

23  your belongings when they have reasonable suspicion that

24  you violated a condition of supervision.

25          And if they think so, they have to lay out

1    the areas to be searched, which they think contains

2    evidence of a violation, and they must conduct any search

3    at a reasonable time in a reasonable manner.

4              But on your part, failure to submit to a

5    search may be grounds for revocation of release.  You

6    must warn any of the occupants of the premises that you

7    occupy they may be subject to searches pursuant to this

8    condition.

9              You must provide the probation officer with

10   access to any requested financial information and

11   authorize release of any financial information, and they

12   may share that information, if needed, with the U.S.

13   Attorney's Office.

14             I am not sure — that will depend whether

15   you paid off the monies that you are required the pay.

16   Otherwise, I don't think there will be any necessity for

17   that.

18             You must not access the internet except for

19   reasons approved in advance by the probation officer.

20   You must allow the probation officer to install computer

21   monitoring software on any computer that you use, and to

22   ensure compliance with the computer monitoring condition,

23   you must allow the probation officer to conduct initial

24   and periodic unannounced searches of any computers

25   subject to computer monitoring.

1            These shall be conducted for the purpose of

2    determining whether the computer contained any prohibited

3    data prior to installation of the monitoring software to

4    determine whether the monitoring software is functioning

5    effectively after the installation and determine whether

6    there have been attempts to circumvent the monitoring

7    software after this installation.

8            You must warn other people who use these

9    computers the computers may be subject to searches

10   pursuant to this condition.

11           You must not possess, view, access, or

12   otherwise use materials that reflect extremist or

13   terroristic views.  You shall work toward a GED while

14   under supervision, and this last one here, let me talk to

15   Mr. Abraham.  It is a polygraph examination.

16           Is that typical in these kinds of cases?

17           MR. ABRAHAM:  Yes, your Honor.  It is used

18   as a tool after treatment, after he is released from

19   prison in order to gain the most effective benefit of

20   treatment, mental health treatment.

21           THE COURT:  Okay.  Now, in reality, that

22   could go on for a long period of time, but that's a

23   condition that could be relieved by the Court if the

24   Court were convinced after hearing from the parties down

25   the road that that was no longer necessary.

1        Is that right?

2              MR. ABRAHAM:  That's correct, your Honor.

3              THE COURT:  And I just wanted to be clear

4    about that.  I am not against doing it, but on the other

5    hand — and this is serious activity that he has engaged

6    in — but you know, a polygraph examination is not

7    something — we do in sex offender cases and some other

8    cases, but it is not a norm because that's very

9    intrusive, and that's someplace we normally don't want to

10   go, but I will impose that here with the understanding he

11   will be constantly evaluated by pretrial probation.

12             MR. ABRAHAM:  Thank you, your Honor.

13             THE COURT:  So he must submit to a periodic

14   polygraph testing at the discretion of the probation

15   officer as a means to ensure that Defendant is in

16   compliance with the requirements of supervision or

17   treatment program.

18                  That's the sentence I intend to impose.

19                  Mr. Roberts, before I finalize that

20   sentence, any objections or anything I have

21   overlooked?

22             MR. ROBERTS:  No, your Honor, just the

23   request for designation of Butner.

24             THE COURT:  I think I agreed to that.

25             MR. ROBERTS:  Okay.

1          THE COURT:  Or I will recommend that.

2          Ms. Baeppler, objections or anything I have

3   overlooked?

4          MS. BAEPPLER:  Your Honor, no objections to

5   the sentence imposed.

6          I would move at this time for the dismissal

7   of Counts 4 and 5 of the superseding indictment, and I

8   would also ask the Court to advise Mr. Pitts of his

9   appellate rights, although he has waived most of them

10  just to preserve our record.

11         THE DEFENDANT:  That I don't want to do —

12         THE COURT:  Okay.

13         THE DEFENDANT:  — give up my appellate

14  rights.

15         THE COURT:  Okay.  So that's the sentence I

16  am going the impose.

17         I will grant the motion to dismiss the

18  counts that you indicated should be dismissed.

19         MS. BAEPPLER:  Thank you, Judge.

20         THE COURT:  Let me talk to Mr. Pitts about

21  appellate rights.

22         You do maintain some appellate rights.  You

23  gave up some, but that's normally what happens when you

24  reach an agreement with the Government.  They give up

25  some things; you give up some things.  They gave up their

1    right the pursue a sentence of 30 years and all that, and

2    they gave up that right, and they compromised.

3              And then, you compromised by waiving some of

4    your rights, and if I had sentenced you higher than the

5    guideline range, is that right, Mr. Roberts, he kept his

6    right to appeal that I had done that?

7              MR. ROBERTS:  Correct, higher than the

8    guideline range or actually higher than the range, which

9    was much lower, agreed to by the parties, higher than the

10   168 months.

11             THE COURT:  Also, if I — if for some reason

12   I had not accepted his 168 months, he would have had a

13   chance to withdraw his plea, correct?

14             MR. ROBERTS:  Correct.

15             THE COURT:  And if I sentenced him higher

16   than the statutory maximum, I assume he would maintain

17   his right to appeal that?

18             MR. ROBERTS:  Correct, your Honor.

19             THE COURT:  But he waived most of what are

20   called direct appeal and collateral attack rights.  Is

21   that correct?

22             MR. ROBERTS:  Yes, your Honor.

23             THE COURT:  Now, no Defendant can waive any

24   claim that he or she might have for ineffective

25   assistance of counsel or prosecutorial misconduct if they

1    had such a claim.  No Defendant can, so you can't either.

2              Do you understand that?

3              THE DEFENDANT:  Yes, your Honor, I

4    understand that.

5              THE COURT:  Okay.  So my job is not to try

6    to advise you whether you have any good grounds for

7    appeal or anything like that.  Judges don't do that.  My

8    job is the make sure you know that, if you wanted to

9    appeal something, you have to start pretty quickly by

10   filing what is called a notice of appeal within 14 days

11   of the judgment of conviction.

12             Do you understand that?

13             THE DEFENDANT:  I understand that very well.

14             THE COURT:  If you wanted to appeal and you

15   could not afford counsel, then I would appoint counsel

16   for you.

17             Do you understand that?

18             THE DEFENDANT:  Uh-huh.

19             THE COURT:  What did you say?

20             THE DEFENDANT:  I said uh-huh.

21             THE COURT:  I don't understand that.

22             THE DEFENDANT:  I say yes, sir.

23             THE COURT:  All right.  Then, I would ask

24   Mr. Roberts to talk with Mr. Pitts and determine whether

25   or not there is anything he wishes to appeal.  If he

1    does, I would ask you to file the notice.

2              We could always determine later whether you

3    would be the right person if he pursued an appeal to

4    represent him through it that.

5              Would you take that responsibility?

6              MR. ROBERTS:  Yes, I will, your Honor.

7    Thank you.

8              THE COURT:  Okay.  Anything further,

9    Ms. Baeppler?

10             MS. BAEPPLER:  Nothing, your Honor.  Thank

11   you.

12             THE COURT:  Anything further, Mr. Roberts?

13             MR. ROBERTS:  Nothing further.

14             THE COURT:  Okay.  That will be all.

15             (Hearing concluded at 11:50 a.m.)

16                    - - - - -

17             C E R T I F I C A T E

18             I, George J. Staiduhar, Official Court

19   Reporter, do hereby certify that the foregoing is a true

20   and correct transcript of the proceedings herein.

21

22             s/George J. Staiduhar
                George J. Staiduhar,
23              Official Court Reporter

24              U.S. District Court
                801 W. Superior Ave., Suite 7-184
25              Cleveland, Ohio 44113